# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **TIMOTHY O. OSWALT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No.: 1:08-CV-194** |
| | ) | |
| **GRANT COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by the defendants on October 15, 2009 (docket at 32). The plaintiff filed a response in opposition to the motion on December 15, 2009 (docket at 37). The defendants filed a reply brief on January 8, 2010 (docket at 42).[1] For the reasons discussed below, the motion for summary judgment is GRANTED in part and DENIED in part. Summary judgment is granted to all defendants on all of the federal claims asserted against them; summary judgment is denied as to the plaintiff's state law claims, but those claims are hereby DISMISSED WITHOUT PREJUDICE.

## FACTUAL BACKGROUND

On May 16, 2006, Timothy Oswalt was arrested in Grant County, Indiana, for possession of marijuana and driving a vehicle under the influence. He was incarcerated in the non-violent offender section of the Grant County Jail. On November 21, 2006, Oswalt was assaulted by another inmate, Cody Crouse. Oswalt maintains that he suffered personal injuries as a result of

---

[1] Both sides moved for, and were granted, extensions of time in which to file their responsive pleadings, which is why briefing on the current motion was not completed until January 8, 2010. Also, the parties filed extensive supporting affidavits and exhibits, along with memoranda in support of their respective arguments.

that battery and this lawsuit arose from that incident. Oswalt filed his original Complaint in this

court on August 18, 2008. Docket at 1. In his Complaint, Oswalt named as defendants Grant

County, Oatess Archey (the Grant County Sheriff), Cathy Lee (the Grant County Jail

Commander) and John Does and Jane Does (all unnamed Grant County Confinement Officers).

*Id*. The individuals named in the Complaint were sued in both their individual and official

capacities. *Id*. Oswalt included several claims in his Complaint. In Counts I through IV of his

Complaint, Oswalt asserted that his rights under the Fourteenth Amendment and Eighth

Amendment had been violated as a result of the defendants' failure to classify and segregate

violent and non-violent offenders who were being held at the Grant County Jail; a failure to train

and supervise its employees properly; and a failure to operate the Grant County Jail properly in

that it was overcrowded and underfunded.[2] In Count V of his Complaint, Oswalt asserted a state

law negligence claim against the defendants.

Oswalt filed two Amended Complaints after obtaining leave of court to do so. The first

was filed on September 18, 2009 (docket at 15). In that First Amended Complaint, Oswalt

named his "John Doe" and "Jane Doe" defendants, adding Grant County Jail Corporals Bradley

---

[2] As the defendants correctly point out in their briefs, Oswalt was a pretrial detainee at the time of the events giving rise to this lawsuit. Accordingly, his claims arise under the Fourteenth Amendment, not the Eighth Amendment. The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees from punishment and places a duty upon jail officials to protect pre-trial detainees from violence. *Fisher v. Lovejoy*, 414 F.3d 659 (7th Cir. 2005). In his brief in opposition to the motion for summary judgment, Oswalt continues to make reference to both Fourteenth and Eighth Amendment claims. This does not really matter, since the analysis of claims brought under 42 U.S.C. § 1983 for alleged constitutional violations is the same. *Id*. at 662 ("in cases involving pre-trial detainees, we commonly consult the 'analogous standards of Eighth Amendment jurisprudence.'") (quoting *Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 764 (7th Cir. 2002)). Still, the defendants are correct that Oswalt's claims are technically Fourteenth Amendment claims, not Eighth Amendment claims.

Moore, Melissa Shugart, Kevin Carmichael, William Kirkpatrick, Matthew Edris, Joe Martin, and Luke Austin, and Grant County Jail Corrections Officer Donald Atkinson. *Id.*, p. 1. Oswalt's Second Amended Complaint (which is now the controlling Complaint in this case) was filed on November 18, 2009 (docket at 25). In his Second Amended Complaint, Oswalt added as defendants Grant County Jail Classification Officer Chris Rinker and Corrections Officer Kevin Sexton. *Id.*, p. 1. The current motion for summary judgment was filed on behalf of all the defendants named in the Second Amended Complaint. Motion for Summary Judgment, docket at 32, pp. 1-2.

According to Oswalt, the incident giving rise to this lawsuit came about after Oswalt made what he claims is a joking comment to Crouse.[3] Oswalt stated that on the day of the incident, November 21, 2006, several inmates were preparing to go to the jail chapel. Plaintiff's Exhibit 1, docket at 39, Oswalt Deposition, p. 8. Crouse "was trying to bum food off people. I made a remark that, when you go to prison, they're going to put you in the Weight Watchers cell block." *Id.* Shortly after Oswalt made this comment to Crouse, another inmate went to Oswalt's cell and told him that Crouse wanted to see him. *Id.* Oswalt walked to where Crouse was in the cell block. Suddenly, according to Oswalt, Crouse "grabbed me from behind and raised me up in the air, and I kept saying, Put me down, Cody. Quit. Quit. Put me down now. . . . And he threw me down on the concrete floor and then was, like, over the top of me, you know. I said, man, get away. I said, Let me up. I attempted to get up and couldn't. And then when I got back to my

---

[3] This recitation of facts concerning the incident involving Oswalt and Crouse is taken from Oswalt's deposition testimony regarding the event. Excerpts of Oswalt's deposition appear in the record as Exhibit A to Plaintiff's Appendix (docket at 39) and as Exhibit 1 to Defendants' Designation of Evidence (docket at 34). There are virtually no disputes about how the incident between the two men unfolded or what happened.

cell block, he come to my cell block and he kept pleading with me, Don't tell them I did it. Don't tell them I was involved. Don't tell them I did it." *Id.*, pp. 8-9. Oswalt stated that he suffered a broken femur as the result of the incident. *Id.*, p. 9.

Again, because the events occurred while he was a pre-trial detainee, Oswalt's claims arise under the Due Process Clause of the Fourteenth Amendment. *Guzman v. Sheahan,* 495 F.3d 852, 856 (7th Cir. 2007). "The protections for pre-trial detainees [under the Fourteenth Amendment] are at least as great as the Eighth Amendment protections available to a convicted prisoner, and we frequently consider the standards to be analogous." *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002) (quotation and citation omitted). It is well-settled that both Amendments impose upon prison officials a duty to protect inmates from violent assaults at the hands of fellow prisoner. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Fisher v. Lovejoy,* 414 F.3d 659, 661 (7th Cir. 2005) (noting that the Fourteenth Amendment extends this protection to pre-trial detainees).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986).  No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).  In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249-251, 106 S. Ct. at 2511.

## DISCUSSION

In their motion for summary judgment, the defendants maintain that they are entitled to judgment as a matter of law because "[t]here is no individual liability on the part of any of the individually named defendants under 42 U.S.C. § 1983.  Further, there is no basis for any official capacity claim under §1983.  Alternatively, the individual defendants are entitled to qualified immunity under § 1983.  Defendants are also entitled to dismissal of all individual capacity

claims under state law pursuant to Ind. Code § 34-13-3-5. They are also entitled to summary judgment on the merits of all state law claims. Further, if the court grants summary judgment on the 42 U.S.C. § 1983 constitutional claims, the court should dismiss [the] pendent state law claims without prejudice for refiling in state court." *Id.*, p. 2.

The defendants argue that they had no prior knowledge whatsoever that inmate Cody Crouse presented a threat to Oswalt or to anyone else, and so they cannot be held liable for allegedly failing to protect Oswalt from the battery he received from Crouse. The defendants state that "[p]rior to the incident on November 21, 2006, inmate Cody Crouse had never threatened Oswalt . . ." Memorandum in Support of Motion for Summary Judgment ("Defendant's Memorandum"), docket at 33, p. 2. They admit that "Crouse may have made remarks toward a couple other inmates prior to that date, but no one had reported Crouse to the jail staff as a potential troublemaker." *Id.* The defendants point out that Oswalt acknowledged as much in his deposition. *Id.* For example, Oswalt admitted the following facts during his deposition:

> Q. Prior to your incident, do you recall any other incidents of conduct where Crouse was either in an argument verbally or physically with any other inmate?
>
> A. No.
>
> Q. Prior to your incident on November 21, 2006, had he ever threatened you at all, Crouse?
>
> A. No.
>
> Q. Do you know whether he'd ever threatened someone else?
>
> A. I'd heard he threatened a couple guys. Their names I don't recall. . . .
>
> Q. Do you know whether anyone reported him to the jail staff as a potential troublemaker?

6

A. No, they just . . .

Q. I'm sorry, they just what?

A. No.

Q. They didn't?

A. No.

. . .

Q. Prior to the date that you had an incident with him in November, did you have any interactions with Cody Crouse, arguments or fights or even just discussions that stick out in your mind?

A. No.

Defendants' Designation of Evidence, Exhibit 1, Deposition of Timothy Oswalt, pp. 8-9.[4]  On the other hand, Oswalt did recount one episode that occurred with Cody Crouse prior to the incident giving rise to this lawsuit.  However, he conceded once again that neither he nor anyone else reported the incident to jail personnel.  *Id.*, pp. 6-7.  In that incident, Oswalt said that inmates were somehow "egging [Crouse] on" to fight "another young kid."  According to Oswalt, the two men scuffled or wrestled, the younger man "gave up" and the incident ended without injury.  *Id.*

The defendants summarize their argument as follows:

Prior to Oswalt's own incident with Cody Crouse, Oswalt had no interactions with Crouse, arguments or fights, or even just discussions that stick out in his mind. . . . There had been no issues or arguments at all between himself and Crouse before the fight in issue . . ."  Plaintiff Oswalt has no reason to believe that anything that Crouse did in the cell block, prior to the date of the incident, had

---

[4] The page numbers cited by the court to reference the parties' pleadings and exhibits are the page numbers assigned to those documents by the court's electronic docketing system, which appear at the top of each page next to the respective docket number.  These page cites may or may not coincide with the page numbers placed on the documents by the parties.

ever been reported to anybody on the jail staff . . .

Defendants' Memorandum, p. 3.  Therefore, the defendants argue, they cannot be held liable for an alleged claim of failing to segregate Crouse prior to the incident or for allegedly failing to have (or failing to follow) a policy to separate potentially violent inmates from the rest of the jail population.  According to the defendants, their lack of any prior knowledge that Crouse presented a threat to Oswalt precludes any claims by the plaintiff–be they constitutional claims or state law negligence claims.  *Id*., generally.

Next, the defendants present arguments specifically tailored to each individual defendant and explain why each defendant is arguably entitled to summary judgment.

### 1.  Individual Capacity Claims Against Sheriff Oatess Archey, Jail Captain Darryl Himelick and Jail Commander Cathy Lee.

Defendants argue that Archey (who was the Grant County Sheriff at the time of the incident but was succeeded by defendant Darryl Himelick) "does not recall ever meeting or speaking to Oswalt of Crouse, and was not contacted by any personnel of the sheriff's office regarding any issues concerning them. . . . He never heard that Crouse was a violent inmate, nor heard any information about him . . . He was not involved in any decisions regarding the classification or placement in the jail [of] either inmates Oswalt or Crouse."  Defendants' Memorandum, p. 6.  Archey submitted an affidavit in which he stated these facts under penalty of perjury.  Defendants' Designation of Evidence, Exhibit 3.

Archey argues that since he had no personal involvement in the incident giving rise to this action, he cannot be held liable in his individual capacity for any alleged constitutional violations or state law negligence claims brought by Oswalt.  It is well established, as Archey points out, that "individual capacity liability under 42 U.S.C. § 1983 arises only when [a]

plaintiff can show that [the] defendant was 'personally responsible for deprivation of a constitutional right.'" Defendants' Memorandum, p. 11 (quoting *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996)). The defendants are also correct when they state that "[t]he substantive law test applied to all individual defendants, since the plaintiff was a pretrial detainee, is deliberate indifference under the Fourteenth Amendment due process clause." *Id.* (citing *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996)). Finally, "[t]o demonstrate deliberate indifference the plaintiff must show the defendant 'acted with a sufficiently culpable state of mind.'" *Id.* (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006)). Since Archey had no knowledge of the events involving Oswalt and Crouse, let alone any personal involvement in any of the events surrounding the incident, the defendants argue that he cannot be held personally liable to Oswalt.

In his response to defendants' motion for summary judgment, Oswalt is unable to refute Archey's position. In fact, Oswalt rarely mentions Archey in his response brief. Instead, he makes many references to the "defendants" as a whole and asserts that they are liable, in their individual capacities, due to their alleged failure to place Crouse in a separate cell block from Oswalt. *See, e.g.*, Plaintiff's Response, pp. 4-5. One of the few references Oswalt makes to Archey attempts to impart personal liability on the former Sheriff by attempting to prove a negative. Oswalt argues as follows:

> It is also important to note that Oatess Archey, the Sheriff of Grant County during the month of November 2006, asserts that at no time *prior* to November 21, 2006 did he ever learn of an incident where jail officers Darrell Himelick, Chris Rinker, Bradley Moore, Melissa Shugart, Kevin Carmichael, Matthew Edris, Joe Martin, Luke Austin, Donald Atkinson or Kevin Sexton failed to properly classify an inmate, failed to protect any inmate from violence, or failed to properly train or supervise any personnel of the Grant County Jail, thereby causing harm to an inmate. . . . In fact, a review of the Defendants' Affidavits indicates that not even

one Defendant affirmatively asserts that the November 21, 2006 incident was *not* caused by a failure to properly classify an inmate and protect Oswalt from Crouse.

*Id*. (italics in original).  In other words, since the defendants, including Archey, do not explicitly state in their affidavits that Oswalt's injuries were *not* the result of a failure to classify Crouse as a potentially violent inmate, that must be the reason the entire incident occurred and individual liability attaches to every single defendant for that reason.  But the fact that Archey does not affirmatively state in his affidavit that a failure to properly classify Crouse was not the cause of incident with Oswalt does not mean that Archey is somehow conceding the point.  The real issue, again, is whether Archey had any personal involvement in the circumstances that led up to and resulted in Oswalt's injuries.  Archey states in his affidavit that he did not.  Oswalt presents no evidence to refute that position.

The case at bar is remarkably similar to the case of *Palmer v. Marion County*, in which the plaintiff, a former pretrial detainee at the Marion County (Indiana) jail, sued the County, the County Sheriff and the City of Indianapolis, claiming the defendants were liable to him for injuries he sustained when he was attacked in the jail by other inmates.  Palmer asserted constitutional claims against the defendants via 42 U.S.C. § 1983.  He sued the sheriff in both his official and individual capacities.  He sued the County and the City alleging that, among other things, they failed to have a proper policy of segregating inmates.  He also asserted state law negligence claims, just as Oswalt has done.  The district court granted summary judgment in favor of the defendants on all of Palmer's claims and the Seventh Circuit affirmed.  In discussing Palmer's claims against the Marion County Sheriff in his individual capacity, and why those claims were properly dismissed, the Seventh Circuit wrote as follows:

Palmer has made no showing that Sheriff Cottey was personally involved in the decision making allegedly amounting to violation of Palmer's constitutional rights; thus, we can dispose of Palmer's claims against Sheriff Cottey in his individual capacity in short order. Because "§ 1983 does not allow actions against individuals merely for their supervisory role of others," *Zimmerman v. Tribble,* 226 F.3d 568, 574 (7th Cir. 2000), "[i]ndividual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue." *Kelly v. Mun. Courts of Marion County,* 97 F.3d 902, 909 (7th Cir. 1996). In addition to the element of deliberate indifference, *Lewis,* 107 F.3d at 553, § 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim. *Zentmyer,* 220 F.3d at 811; *Zimmerman,* 226 F.3d at 574; *Davis v. Zirkelbach,* 149 F.3d 614, 619 (7th Cir. 1998). Although direct participation is not necessary, there must at least be a showing that the Sheriff acquiesced in some demonstrable way in the alleged constitutional violation. *Kelly,* 97 F.3d at 909; *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir. 1986). To prevail on his claim, Palmer must establish that Sheriff Cottey actually knew that Palmer was assigned to Cell Block 2T and that the Sheriff inferred from that assignment that there was a substantial risk of serious harm to Palmer. *See Farmer,* 511 U.S. at 837, 114 S.Ct. 1970 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Lewis,* 107 F.3d at 553 ("the official must actually know and disregard the risk to incur culpability"). Palmer, however, has failed to make any showing that Sheriff Cottey had knowledge of the initial fight in Cell Block 2T, or the risk Palmer faced when he was assigned to Cell Block 2W.

*Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Just as in the *Palmer* case, there is no evidence in the present case that then-Sheriff Archey knew anything about Crouse, Oswalt, or the situation giving rise to this lawsuit–let alone that he was personally involved. Consequently, Oswalt's claims against Archey in his individual capacity fail and Archey is entitled to summary judgment.

Himelick and Lee present exactly the same argument as Archey, stating that they had no personal knowledge of Oswalt or Crouse, no knowledge of the incident involving the two men, and no involvement in placing or not placing any inmate in a particular classification or segregation. Defendants' Memorandum, pp. 6-7. Therefore, Himelick and Lee maintain that

they, to, are entitled to summary judgment on Oswalt's claims. Both Himelick and Lee rely on the same well established case law to support their arguments. *Id*. As was the case with Archey, Oswalt is unable to present any evidence to refute the positions taken by Himelick and Lee.

Oswalt attempts to impart personal knowledge and/or personal involvement onto Himelick and Lee (and Archey) by claiming that their assertion "that they had no knowledge, prior to the November 21, 2006 attack on Oswalt, that Crouse was a violent individual[.]" . . . "is blatantly contradicted by evidence in the record . . ." Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ("Plaintiff's Memorandum"), docket at 38, p. 2. Oswalt bases this assertion on the undisputed fact that "Crouse had fought with another inmate, approximately two and a half months before this incident." *Id*., pp. 2-3. Oswalt recounts that defendant Kevin Sexton "wrote an incident report in August of 2006 indicating that Crouse had broken a broom handle, was striking the cell door with it, and demanded officers to remove him from his cell block *due* to an argument with another inmate. . . . Officer Sexton recommended that Crouse be placed on a no-mix list. . . . Oswalt also remembers having discussions regarding Crouse's altercations with officer Joe Martin. . . . [O]fficer Sexton acknowledges that he probably told officers Atkinson and Carmichael about Crouse's incident the next day." *Id*., p. 3 (italics in original). In support of these assertions, Oswalt cites the deposition of defendant Sexton (Defendants' Designation of Evidence, Exhibit 2, p. 3) and his own deposition testimony (Plaintiff's Appendix, Exhibit A, p. 14). The problem for Oswalt is that he presents no evidence whatsoever (in fact, not even an explicit allegation) that any of this alleged prior trouble with

Crouse was ever conveyed to Archey, Himelick or Lee.[5]  Again, Archey, Himelick and Lee have

submitted affidavits in which they state that they had no knowledge of Oswalt or Crouse, or of

any propensity for violence that Crouse may have possessed.  Oswalt presents no evidence to

refute these assertions.  Even when the court considers the evidence in a light most favorable to

Oswalt, it is clear that his claims against Archey, Himelick and Lee in their individual capacities

must be dismissed.  Thus, defendants' motion for summary judgment is granted with respect to

Oswalt's federal claims against defendants Archey, Himelick and Lee in their individual

capacities.

### 2. Individual Capacity Claims Against Grant County Jail Corporals or Corrections Officers Rinker, Moore, Shugart, Carmichael, Kirkpatrick, Edris, Martin, Austin, Atkinson, and Sexton.

Oswalt accuses all of the above-named officers of being personally liable to him under 42

U.S.C. § 1983 as a result of certain alleged acts and/or omissions on their part.  As stated above,

personal liability will not attach to any of these defendants unless Oswalt can prove (or at least

raise a fact issue about) each defendant's personal involvement in the deliberate deprivation of

Oswalt's constitutional rights.  Oswalt contends that these defendants "had prior knowledge that

---

[5] Oswalt's assertion that he "remembers having discussions regarding Crouse's altercation with officer Joe Martin[.]" does nothing to support his contention that the defendants, each and every one of them, knew of Crouse's alleged violent tendencies.  All that Oswalt said in his deposition was that he "believe[d] Martin is the one that took me to and from my doctor's appointments, and I believe I said something to him a couple times pertaining to what went on.  He's the one that took me to my doctor's appointments.  That name sounds familiar."  Oswalt Deposition, Plaintiff's Exhibit A, p. 14.  This vague recollection of a possible conversation with Martin concerning Crouse hardly proves that Archey, Himelick or Lee knew anything about the situation or had any personal involvement with Oswalt or Crouse so that their actions (or omissions) could be characterized as "deliberate indifference."  More to the point, Oswalt's recollection, even assuming its truthfulness, does not create a genuine issue of material fact to overcome the Archey's, Himelick's and Lee's motion for summary judgment on the issue of their individual liability under § 1983.

Crouse was a violent and dangerous person," and that they improperly released Crouse into the general population rather than segregating him in some way. Plaintiff's Memorandum, pp. 2 and 4. More specifically, Oswalt levies the following allegations in an attempt to establish that these particular defendants were personally involved in the deprivation of Oswalt's rights:

 . . . Carmichael and . . . Moore . . . are listed as Crouse's booking officers in July of 2006 and were therefore well aware of not only his charging information (violence with a deadly weapon causing injury) but also his personal history[6] . . . but ignored these warning signs and did classified [sic] Crouse for release into the general population with minimum security." *Id*., p. 6.

Oswalt also contends that "[f]ollowing an altercation with another inmate in August of 2006, officer Sexton recommended that Crouse be placed on a no-mix list . . ., but failed to do

---

[6] According to Oswalt, Crouse had attempted suicide at some point in the past, and had family members who had done the same. Plaintiff's Memorandum, p. 6. Therefore, argues Oswalt, the defendant jail officers "should have placed him under close supervision by the officers of the Grant County Jail since if he were not a threat to others, he certainly exhibited a history of being a threat to himself." *Id*. This is an odd argument. First, the court is at a loss to understand how the fact of suicide attempts by members of Crouse's family–assuming it is a fact–is relevant to any issue in this case. Second, any previous attempt at suicide by Crouse himself (again, assuming the truth of this assertion) does not establish that Crouse might harm another person. The court will presume that Oswalt presents this information in a general attempt to characterize Crouse as emotionally and/or mentally unstable. Oswalt acquired this information from one page of the Grant County Sheriff's Department Jail Management form that was completed in July 2006 when Crouse was processed into the jail. *See* Defendants' Designation of Evidence, docket at 34, Exhibit 6, p. 15. That form does, in fact, indicate that Crouse revealed to officers during his intake process that some member or members of his family had attempted or committed suicide. *Id*. Crouse also admitted that he had attempted suicide at some time in the past. *Id*. However, the form also reveals that Crouse had never been treated for any mental disturbance, alcohol or drug abuse, was not "overly anxious, afraid or angry" at the time of intake, was not "acting and/or talking in a strange manner," showed no signs of being under the influence of alcohol or drugs, and showed no signs of mental illness. *Id*. Oswalt ignores all of this information. Consequently, this evidence does not support Oswalt's contention that the defendants should have segregated Crouse from the general jail population, either for his own safety or the safety of any other inmate.

any follow up to ensure that Crouse was actually placed on this list." *Id*. Oswalt cites as supporting evidence of this fact an Incident Report written by Sexton on August 28, 2006. Defendants' Designation of Evidence, Exhibit 19. In that report, Sexton stated that Crouse was yelling and arguing with another inmate named Callahan. *Id*. Crouse had broken a broom and was banging the broken broom stick on the bars of his cell. *Id*. Crouse was talking "throughout the night causing agitation amoung [sic] the other inmates throughout the block." *Id*. Crouse was apparently relocated to another cell. *Id*. Sexton concluded his report by writing that "inmate Crouse will be placed on the no mix list with inmate Callahan following this incident." *Id*. It is important to note that in his report, Sexton names several other jail officers who were called to assist when Crouse was being unruly on this particular night, but none of those officers are named defendants in this case.

Oswalt also argues that the defendant jail corporals and confinement officers knew or should have known that Crouse presented a threat since "Crouse also had a number of verbal altercations with other inmates . . . and exhibited odd and disruptive behavior in the cell block. . . . He frequently became angry with other inmates, would cuss at them and tell them to shut up. . . . In fact, one of the jail guard[s] informed Oswalt that the reason for Crouse's transfer to his cell block was because Crouse had problems with people in his prior cell block." Plaintiff's Memorandum, p. 3. However, in support of these factual assertions, Oswalt cites to his own deposition testimony. For example, Oswalt's allegations of Crouse's "verbal altercations with other inmates" and his alleged "odd and disruptive behavior" are based solely on Oswalt's recollection that he "heard [Crouse] threatened a couple guys." Plaintiff's Appendix, Exhibit A, Oswalt Deposition, p. 7. Oswalt's contention that Crouse "frequently became angry with other

inmates" is supported only by Oswalt's own recollection of hearing Crouse tell some other

inmates to "shut up" and shouting "cuss words" at them.  *Id*., pp. 12-13.  Oswalt's statement that

Crouse had been moved as a result of problems in a prior cell block was based on a remark

Oswalt contends was conveyed to him by a "jail guard," but Oswalt does not name the guard and

so there is no evidence that this information was conveyed by one of the named defendants.

Most importantly, as already discussed earlier in this Opinion and Order, when Oswalt recounted

these purported facts during his deposition, he expressly stated that neither he nor any other

inmate reported the incidents to jail personnel.  Therefore, these allegations do nothing to

support Oswalt's contention that all of the individual jail corporals and jail confinement officers

named in his Complaint had personal knowledge of Crouse's alleged dangerous and violent

propensities or that their failure to segregate Crouse from other inmates resulted in Oswalt's

injuries.  It is hardly enough that Oswalt "heard" that Crouse had "threatened a couple guys" or

that Oswalt heard Crouse tell some other inmates to shut up and use profanity, especially given

the fact that Oswalt did not report these alleged problems to jail staff.  Anyway, even if Oswalt

had reported what he had heard, it would not establish that the jail officers were liable to Oswalt

for violations of his constitutional rights.  If the mere fact that a jail inmate told other inmates to

shut up, or used profanity, or even verbally threatened other inmates (depending, perhaps, on the

severity and specificity of the threat) were to be construed as putting jail officers on notice that

that particular inmate presented an imminent threat of harm to another inmate, every jail in the

country would have to place virtually all of its prisoners in solitary cells and avoid any

intermingling whatsoever.

What Oswalt is left with, in terms of his evidence that individual liability should attach to any of the defendants, is Sexton's Incident Report and Crouse's intake form. The former indicated that Crouse should be placed on a no mix status and the latter indicated that he was processed into the jail as the result of the very serious charge of attacking another person with a deadly weapon. Obviously, Sexton had personal knowledge of the facts he placed in his report and he concluded that Crouse should be placed on a "no mix list" at least with respect to one other inmate. It is also undisputed that officers Carmichael and Moore knew at the time that Crouse was booked into the jail that he had been accused of an act of violence by use of a deadly weapon. Oswalt argues that these facts support his argument that Crouse should have been segregated from the general population or, at least, from inmates who were being held for nonviolent offenses. As the court alluded to previously, it is questionable whether it is reasonable to expect the Grant County Jail to segregate every inmate who has a dispute with another inmate or who is held on charges of assault or battery with a deadly weapon. Jails are often teeming with such inmates and/or detainees, and just because an inmate may have been unruly on a particular occasion or was charged with a violent crime does not automatically mean he presents a physical threat to other inmates while incarcerated.

The defendants reply to Oswalt's assertions by pointing out that "Sexton's report speaks of this as a verbal incident only. . . . Further, while plaintiff repeatedly refers generalistically [sic] to Crouse being put on a 'no-mix list' after this incident, again the proper context is that he was put on such a list with the other inmate in that incident, Timothy Callahan. There is no evidence Crouse was ever placed on a 'no-mix' list with plaintiff Oswalt, or anyone else." Defendants' Reply, pp. 2-3. Defendants go on to argue that "[w]hat remains in plaintiff's

presentation is nothing but . . . an argument that Cody Crouse should have been put in solitary isolation from any prisoner, simply because he was charged with a violent offense (not yet proven), and/or had suicidal tendencies." *Id*., p. 4. Finally, defendants argue that Oswalt's claims rest completely on what Oswalt thinks the defendant jail officers "should have . . . known" or "should have done," rather than on evidence of what they did know about Crouse and whether he truly presented a danger to Oswalt. *Id*., pp. 4-5. As the defendants state, "[r]ather than establishing deliberate indifference by specific notice of an impending attack, repeated reference throughout plaintiff's presentation is made to a 'should have known' standard, as if that were enough. Indeed, it has long been specifically rejected. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7ᵗʰ Cir. 2008) . . . ." *Id*., pp. 1-2. In the *Grieveson* case, the Seventh Circuit explained that "the inquiry is not whether individual officers *should have* known about risks to [an inmate's] safety, but rather whether they *did* know of such risks. *Farmer,* 511 U.S. at 842-43, 114 S.Ct. (1970)." *Grieveson*, 538 F.3d at 765 (italics in original).

The defendants also take note of a recent decision in this court, in which Judge Simon reiterated that allegations that jail officers "should have known" that a particular prisoner might present a threat to fellow prisoners are insufficient to establish a claim of "deliberate indifference," which is required to impose individual liability for a constitutional violation. Defendants' Reply, p. 7 (citing to and quoting from *Johnson v. Westville Correctional Facility*, 2008 WL 5423983 *2 (N.D. Ind. Dec. 30, 2008)). In the *Johnson* case, as defendants correctly represent, Judge Simon, addressing claims by an inmate similar to those presented by Oswalt, explained as follows:

> [P]rison officials know that dangerous, violent people are housed together in close quarters. Even if [plaintiff] had named an individual defendant, at most, he would

18

> be alleging that such a defendant should have speculated as to the threat posed by
> his attacker. But even that would not be sufficient to state a claim of deliberate
> indifference. As *Klebanowski* . . . explained, even twice requesting a transfer
> because of fear of death following being attacked by three fellow inmates is
> insufficient to state a claim.

*Johnson*, 2008 WL 5423983 *2 (citing *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991) and

*Klebanowski v. Sheahan*, 540 F.3d 633 (7th Cir. 2008)). In *Klebanowski*, the Seventh Circuit held

that jail officials were not deliberately indifferent to the safety of non-gang member inmates when

they housed them with known gang members, where officials had no direct, specific knowledge that

any inmates presented threats to any other inmates. In *McGill*, the court held that a detainee seeking

to impose individual liability on jail officers for injuries he sustained after being attacked by other

inmates had to establish that the defendants had actual knowledge of an impending threat and failed

to take action to prevent it. The court held that "[a] prisoner normally proves actual knowledge of

impending harm by showing that he complained to prison officials about a specific threat to his

safety." *McGill*, 944 F.2d at 349.

In this case, Oswalt's individual capacity claims are based only on his argument that the

individual defendants *should have inferred* that Crouse presented a danger to Oswalt since he was

arrested for assault with a deadly weapon and since an incident report written months earlier

indicated that Crouse was involved in a verbal dispute with another inmate. This evidence, even

when examined in a light most favorable to Oswalt, is woefully insufficient even to raise a fact issue

that Crouse presented an impending threat to Oswalt, that the defendants had personal knowledge

of that threat, and that they acted with deliberate indifference to Oswalt's safety. It is not enough

for a plaintiff to present evidence that jail official and/or jail officers may have been negligent or

even grossly negligent, since neither concept rises to the level of deliberate indifference. *Fisher v.*

*Lovejoy*, 414 F.3d 659 (7th Cir. 2005). For these reasons, all of the individual defendants are entitled to summary judgment in their favor on all of Oswalt's individual capacity claims under 42 U.S.C. § 1983.[7]

### 3. Official Capacity Claims and Claims Against Grant County.

Having determined that Oswalt's individual capacity claims cannot survive the individual defendants' motion for summary judgment, the court turns to Oswalt's claims against Grant County and his claims against the individual defendants in their *official* capacity. Claims against individual government employees or state actors in their official capacity are actually claims against the governmental unit itself. *Guzman v. Sheahan,* 495 F.3d 852, 859 (7th Cir. 2007). Oswalt must therefore establish that the deliberate indifference to which he allegedly was subjected came about as a result of a custom or policy established by Grant County officials. *See Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 690-91 (1978); *see also Frake v. City of Chicago,* 210

---

[7] The individual defendants also argue in their motion for summary judgment that they are entitled to qualified immunity from Oswalt's claims. Defendants' Memorandum, p. 15. Qualified immunity shields government employees from civil liability for alleged acts or omissions committed while acting in the course of their employment when those acts or omissions are not inconsistent with the rights they are alleged to have violated. *Leaf v. Shelnutt,* 400 F.3d 1070, 1080 (7th Cir. 2005). The doctrine of qualified immunity provides not just a defense to such claims, but bars them altogether. *Id.* Because the court has concluded that Oswalt cannot sustain his claims against the individual defendants, the court need not address the qualified immunity argument at length. It is sufficient to note that a plaintiff such as Oswalt can only defeat the qualified immunity doctrine if he can show 1) the right he alleges was violated was clearly established at the time of the alleged violation, and 2) the defendants knew their actions violated that clearly established right. *Morrell v. Mock,* 270 F.3d 1090, 1100 (7th Cir. 2001). There can be no question that a pretrial detainee's right to be protected from physical assault is a clearly established right. However, given the facts of the case at bar, as discussed at length above, Oswalt is unable to present evidence to establish that any of the individual defendants knew that their actions were placing Oswalt in an unreasonably dangerous environment likely to result in physical harm. Therefore, the doctrine of qualified immunity would serve to bar Oswalt's claims against the individual defendants and would provide an alternative ground for summary judgment in their favor.

F.3d 779, 781 (7th Cir. 2000) ("a plaintiff must show that municipal policymakers made a deliberate choice among various alternatives and that the injury was caused by the policy."). Three forms of unconstitutional policies or customs are recognized in this context: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). Governmental entities, such as a sheriff's department or a county, cannot be liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. *Id.* Oswalt sued Sheriff Archey and all the other individual defendants in their official as well as individual capacities. The official capacity claims are simply another way of stating claims against the Grant County Sheriff's Department, i.e., the governmental entity itself. *Monell,* 436 U.S. 658.

The defendants argue that Oswalt fails to present any evidence that a policy or custom, or lack thereof, on the part of the Grant County Sheriff's Department or Grant County itself, caused the deprivation of any of Oswalt's constitutional rights. Defendants' Memorandum, p. 16. The defendants also argue that there can be no "governmental liability if there is no individual section 1983 liability against jail officers on the underlying substantive claim." *Id.* (citing *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2007) and *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007)). The defendants argue that in this case "there was no underlying constitutional deprivation by any individual defendant. There being on underlying individual liability, there can be no official capacity liability on the part of the Grant County sheriff either." *Id.*, p. 17 (citing *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997)).

The defendants argue that "[t]he policymaking authority, the sheriff himself, did not commit a constitutional deprivation and was not personally involved with either Oswalt or Crouse. Nor did an e xpress policy of the sheriff, when enfo rced, cause a subordinate to violate Oswalt's constitutional rights." *Id*. The defendants also a rgue that Grant County is entitled to sum mary judgment since "[n]either a county nor i ts boa rd of com missioners can be liable for torts or deprivations by employees of the sheriff." *Id*., p. 19 (citations omitted). The defendants further state "[t]his 'well settled' principle was recognized by the Seventh Circuit in *Estate of Drayton v. Nelson*, 53 F.3d 165, 167-68 (7th Cir. 1994) ('We can be extremely brief. Marion County has no authority over the sheriff or his deputies.'). Indiana rejects the notion that a county or its commissioners owe a duty to administer a jail or provide a safe place for incarceration." *Id*., p. 20 (citing *Weatherholt v. Spencer County*, 639 N.E.2d 354, 356 (Ind. App. 1994) and *Donahue v. St. Joseph County*, 720 N.E.2d 1236, 1240 (Ind. App. 1999)). Therefore, defendant Grant County is entitled to judgment as a matter of law upon all claims herein, state and federal." *Id*.

Oswalt responds to these argum ents by claim ing that the "defendants failed to properly supervise the inm ates, train their personnel and m anage the prison population." Plaintiff's Response, p. 5. Oswalt argues that the failure by the defendants to have such proper policies in place caused the deprivation of his constitut ional rights and is the basis for his official capacity claims and his claims against Grant County.

Oswalt's claims against Grant County fail for the reasons the defendants have argued. That is, a county is not liable for the acts of the sheriff or the sheriff's department and cannot, therefore, be sued under 42 U.S.C. § 1983 for constitutional violations allegedly committed by the sheriff or his deputies. This legal doctrine is well established not only in the cases decided by Indiana state

courts (as cited by the defendants) but also by federal courts. *See, e.g., Estate of Drayton v. Nelson,*

53 F.3d 165, 167-68 (7th Cir. 1994) (improper to even name a county as a defendant in an action

under § 1983 for claims based on the actions of the county sheriff and/or his deputies). Under

Indiana constitutional, statutory, and case law, county commissioners, and, accordingly, Indiana

counties, do not control the acts of county sheriffs. *Delk v. Board of Com'rs of Delaware County,*

503 N.E.2d 436, 440 (Ind.Ct.App. 1987). Article 6, Section 2 of the Indiana Constitution establishes

the office of the county sheriff, and the legislature determines its powers and duties. *See* Ind.Code

36-2-13-5. Although county commissioners have some emergency powers relating to county

sheriffs, "those powers do not relate to the ability to control the acts performed by any deputy or,

indeed, by the sheriff." *Delk,* 503 N.E.2d at 440. Therefore, an agency relationship does not exist

between [a] County and its commissioners and the . . . County Sheriff.[8]

The defendants are also correct that where there is no underlying constitutional deprivation

by the employees of a political entity, there can be no claim for failure to train. It is true that in

certain circumstances, a municipality can be held liable under § 1983 if its failure to train its

employees results in a constitutional violation, which is what Oswalt is alleging here. However, it

is also clear under applicable Seventh Circuit law that "there can be no liability under *Monell* for

failure to train when there has been no violation of the plaintiff's constitutional rights." *Jenkins v.*

*Bartlett,* 487 F.3d 482, 492 (7th Cir. 2007) (citing *Alexander v. City of South Bend,* 433 F.3d 550,

_____

[8] As the defendants also point out in their briefs, Oswalt cites no authority whatsoever to support his contention that he has any claim against Grant County under 42 U.S.C. § 1983. He merely alleges in his memorandum that Grant County jail officers were not properly trained and that the jail was somehow not properly managed. Thus, the only possible basis for his claims against Grant County would be a *respondeat superior* claim, which of course is not cognizable under § 1983.

557 (7th Cir. 2006)).  Having determined that the individual officers' actions were not violative of

Oswalt's constitutional rights, neither Grant County nor the Grant County Sheriff's Department can

be held liable for any alleged failure to train these officers.  *See Estate of Crouch v. Madison County*,

2010 WL 117699 *12 (S.D. Ind., Jan. 6, 2010).  For all of these reasons, the defendants are entitled

to summary judgment on all of Oswalt's claims against Grant County and his official capacity

claims against the individual defendants.

### 3.  State Law Negligence Claims.

Oswalt has asserted state law negligence claim s against the defendant s in addition to his

constitutional claims.  State law claims can accompany federal law claims brought in district court

pursuant to 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over a

claim based upon state law that is closely related to the federal claim in a case.  However, "[w]hen

the federal claim in a case drops out before trial, the presum ption is that the district judge will

relinquish jurisdiction over any supplemental claim to the state courts."  *Leister v. Dovetail, Inc.,*

546 F.3d 875, 882 (7th Cir. 2008).  There are exceptions to that general rule, and the court should

decide t he m erits of a supplem ental state claim  when: (1) the statute of lim  itations has run,

precluding the filing of a separate suit in state court; (2) substantial judicial resources have already

been committed, so that sending the case to another court will cause a substantial duplication of

effort; or (3) when it is "absolutely clear" how the state claims should be decided.  *Davis v. Cook*

*County,* 534 F.3d 650, 654 (7th Cir. 2008).

In this case, none of the exceptions listed above are applicable.  Dismissal of Oswalt's state

law claim s without prejudice w ill avoid any lim itations problem s since they w ere timely filed

originally in this court; substantial judicial resources have not been expended since this case is being

dismissed at the relatively early summary judgment stage; and the outcome of Oswalt's state law claims is not "absolutely clear" since the elements of a state law negligence claim are very different from the elements of Four teenth Amendment violations claims. Also, the fact that this court concludes that Oswalt cannot sustain his constitu tional claims does not automatically mean he cannot prove negligence claims against the same defendants. The burden of proving deliberate indifference is significantly more onerous than proving breach of duty and proximate cause. Finally, a state court will be m ore intimately familiar with the law governing Oswalt's state law claim s. Accordingly, the court declines to exercise its supplemental jurisdiction over Oswalt's state law claims, denies defendants' motion for summary judgment on those claims, and dismisses Oswalt's state law claims without prejudice.[9]

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by the defendants (docket at 32) is GRANTED in part and DENIED in part. Sum mary judgment is granted t o all defendants on all of the federal claims asserted against them; summary judgment is denied as to the plaintiff's state law claims, but those claims are hereby DISMISSED WITHOUT PREJUDICE.

Date: February 8, 2010.

s/William C. Lee
_____
William C. Lee, Judge
United States District Court
Northern District of Indiana

---

[9] In their brief, the defendants acknowledge that dismissal of Oswalt's state law claims without prejudice, so they may be re-filed in state court, is a viable resolution of those claims if all of Oswalt's federal claims are dismissed. *See* Defendants' Memorandum, p. 21 (acknowledging that if this court does not rule on merits of Oswalt's state law claims, they should be dismissed without prejudice).